# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| Koppers Performance Chemicals, Inc., f/k/a Osmose Wood Preserving Co. of America, Inc. f/k/a Osmose Wood Preserving, Inc. f/k/a Osmose, Inc., <br><br> Plaintiff, <br><br> v. <br><br> The Travelers Indemnity Company; Argonaut-Midwest Insurance Company d/b/a Argo Group; Insurance Company of North America d/b/a Chubb; Indemnity Insurance Company of North America d/b/a Chubb; Pacific Employers Insurance Company d/b/a Chubb; and Ace American Insurance Company d/b/a Chubb, <br><br> Defendants. | Civil Action No. 2:20-cv-2017-RMG <br><br><br> **ORDER AND OPINION** |

Before the Court is Plaintiff Koppers Performance Chemicals, Inc. f/k/a Osmose Wood Preserving Co. of America, Inc. f/k/a Osmose Wood Preserving, Inc. f/k/a Osmose, Inc.'s ("Plaintiff" or "Koppers") motion for partial summary judgment on duty to defend against Defendant The Travelers Indemnity Company ("Travelers") (Dkt. No. 101). Also before the Court is Travelers' motion for summary judgment (Dkt. No. 100) and Travelers' motion to strike (Dkt. No. 125). For the reasons stated below, the Court grants Plaintiff's partial motion for summary judgment, grants in part and denies in part Travelers' motion for summary judgement, and denies Travelers' motion to strike.

1

I. **Background**[1]

This is a declaratory judgment action and breach of contract action filed by Plaintiff against various insurance companies including Travelers. (Dkt. No. 1).

Travelers issued policy number TR-NSL-107T689-078 in effect from January 1, 1978 to January 1, 1979 (the "Policy") to Osmose Wood Preserving of America, Inc., an entity to which Koppers is the successor in interest. (Dkt. No. 99 ¶¶ 1-2). The Policy is governed by South Carolina law. (*Id.* ¶ 4).

On November 24, 2014, Philip H. Riley initiated a lawsuit in South Carolina state court (the "Underlying Action") against, inter alia, Koppers. (*Id.* ¶ 5); (Dkt. No. 100-4). The complaint in the Underlying Action alleged that Riley was then 35-years old, that Riley had handled wood—in an occupational context—treated with chromated copper arsenate ("CCA"), and that his exposure to CCA had caused Riley to develop cancer.

On March 16, 2016, Riley was deposed in the Underlying Action. (Dkt. No. 99 ¶ 38).

On August 24, 2016, Koppers attempted to mediate the Underlying Action with Riley. (Dkt. No. 115 at 8); (Dkt. No. 100-1 at 7).

On September 1, 2016, Koppers sought a defense and indemnity from Travelers regarding the Underlying Action. (Dkt. No. 99 ¶ 5).

On May 18, 2017, Travelers first requested and learned that Riley's date of birth was December 27, 1978. (*Id.* ¶¶ 33-34).

On July 18, 2017, Travelers denied Koppers coverage with respect to the Underlying Action (the "Denial Letter"). (*Id.* ¶ 35); (Dkt. No. 100-3) (copy of Denial Letter). "At the time that

---

[1] The facts herein are drawn in large part from the parties' joint stipulation. (Dkt. No. 99 at 1) ("The Stipulations were prepared in an effort to avoid the time, expense, and other impacts of discovery and for use by the Court in evaluating the dispositive motions of Koppers and/or Travelers.").

it issued the Denial, Travelers was aware of and was in possession of pages 1, 2, 3, 4, 27, 28, 34, 52, 80, 107, 118, 119 of the deposition transcript of Mr. Riley in the Underlying Action, taken March 16, 2016, including Mr. Riley's statement at page 107 that his 'level of exposure to CCA would have been the same as [his] father's ...from '78 to '92, you know when I was – from the time of being born until we stopped working with it in 1992 – that's the timeframe that I'm talking about.'" (Dkt. No. 99 ¶ 38); (*Id.* ¶ 42) ("The documents in Travelers' possession relating to the Underlying Action at the time it issued the Denial Letter were the Complaint in the Underlying Action, the aforementioned pages of deposition of Mr. Riley, and the other documents produced as part of its document production (TRAV0001-0312 and TRAV0331-0768).").

On March 23, 2018, Koppers settled the claims against it in the Underlying Action for $150,000.00. (*Id.* ¶ 51).

On May 27, 2020, Koppers filed a declaratory judgment action, seeking a declaration the Policy applies to the Underlying Lawsuit. (Dkt. No. 1 at ¶ 19 *et seq.*). Koppers asserts a breach of contract action alleging Travelers breached the duty to defend and indemnify Koppers in the Underlying Action.

On January 3, 2022, Travelers moved for summary judgment. (Dkt. No. 100, 120). Koppers opposes. (Dkt. No. 115).

On January 3, 2022, Koppers moved for partial summary judgment as to the duty to defend. (Dkt. No. 101, 102, 121). Travelers opposes. (Dkt. No. 114).

On February 8, 2022, Travelers moved to strike certain portions of Koppers' summary judgment materials. (Dkt. No. 125). Koppers opposes. (Dkt. No. 128).[2]

---

[2] Because the Court does not rely on the information challenged by Travelers in its motion to strike, (Dkt. No. 125 at 2) (challenging statements from the affidavit of Stephen Kiefer, attached to Koppers' opposition to Travelers' motion for summary judgment, regarding the distinction

The parties' respective motions are fully briefed and ripe for disposition.

## II. Legal Standard

To prevail on a motion for summary judgment, the movant must demonstrate that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The party seeking summary judgment has the burden of identifying the portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [which] show that there is no genuine issue as to any material fact and that the moving part is entitled to a judgement as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 & n.4 (1986) (citing Rule 56(c)). The Court will interpret all inferences and ambiguities against the movant and in favor of the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Where the moving party has met its burden to put forth sufficient evidence to demonstrate there is no genuine dispute of material fact, the non-moving party must come forth with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing Rule 56(e)). An issue of material fact is genuine if the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

## III. Discussion

First, the Court considers whether Travelers owes Koppers a duty to defend the Underlying Action.

Under South Carolina law, "[q]uestions of coverage and the duty of a liability insurance company to defend a claim brought against its insured are determined by the allegations of the complaint." *City of Hartsville v. South Carolina Mun. Ins. & Risk Fin. Fund*, 382 S.C. 535, 543

---

between "Koppers" and "Osmose" and Travelers' alleged notice of the Amended Complaint in the Underlying Action in April 2017), the Court denies Travelers' motion to strike as moot.

4

(2009) (citing *C.D. Walters Const. Co. v. Fireman's Ins. Co. of Newark, N.J.*, 281 S.C. 593, 594 (Ct. App. 1984)). If the "underlying complaint creates a possibility of coverage under an insurance policy, the insurer is obligated to defend" its insured. *Id.* at 544 (citing *Gordon-Gallup Realtors, Inc. v. Cincinnati Ins. Co.*, 274 S.C. 468 (1980)). Moreover, "[a]lthough a determination of an insurer's duty to defend is dependent upon the complaint, an analysis of this duty involves the allegations of the complaint and not the specifically identified causes of action." *Id.* at 544–45. "An insurer's duty to defend may arise from facts outside of the complaint that are known to the insurer." *Id.* at 545.

It is the insured's burden to establish that a claim falls within the coverage of an insurance contract. *Jensen v. Selective Ins. Co. of Se.*, No. 4:12–cv–02133–RBH, 2013 WL 3148341, at *2 (D.S.C. June 19, 2013) (citing *Gamble v. Travelers Ins. Co.*, 251 S.C. 98, 102 (1968)). Alternatively, the insurer shoulders the burden of establishing the exclusions to coverage and the exclusion is construed "most strongly" against the insurer. *Id.* (citing *Boggs v. Aetna Cas. & Sur. Co.*, 272 S.C. 460, 252 S.E.2d 565, 568 (1979)). However, an insured party bears the burden of proving an exception to an exclusion. *Ross Dev. Corp. v. PCS Nitrogen Inc.*, Nos. 12–2059, 12–2454, 2013 WL 2440844, at *3 (4th Cir. June 6, 2013) (citing *Helena Chem. Co. v. Allianz Underwriters Ins. Co.*, 357 S.C. 631, 636, 594 S.E.2d 455, 460 n.5 (2004)).

The Court finds that Travelers owed Koppers a duty of defense in the Underlying Action. As noted above, the original complaint in the Underlying Action indicated that Riley was 35 years old as of November 24, 2014, and thus born in either 1978 or 1979. The original complaint alleged that Riley was exposed to CCA in an occupational context, however, which would have put his exposure to CCA outside of the years during which the Policy was in effect. *See* (Dkt. No. 100-4 ¶ 23) (alleging that "[f]or years, Mr. Riley worked in the fence-making industry using treated

lumber"); (Dkt. No. 115 at 7-8) (admitting as much and stating that "Mr. Riley's initial complaint filed in 2014 did not appear to allege exposure from birth, so Koppers notified its insurers providing coverage in the 1990s and 2000s.") Nevertheless, deposition testimony available to Travelers as of July 18, 2017 indicated a possibility that Riley could have been exposed to CCA between his birth on December 27, 1978 and January 1, 1979. (Dkt. No. 100-4 at 107:10-13) ("But from '78 to '92, you know, when I was—from the time being born until we stopped working with it in 1992, that's the timeframe that I'm talking about."). In fact, though Travelers rejected the possibility Riley was exposed to CCA as a newborn, the Denial Letter impliedly acknowledged such a conclusion was possible. (Dkt. No. 100-3 at 29) (acknowledging the conflicting nature of Riley's deposition testimony and noting that "[a]lthough the allegations of the complaint suggest that Mr. Riley did not suffer injuries 'during the policy period' as required by the Policy, you provided excerpts from Mr. Riley's deposition during which he alleges *he was exposed to CCA 'from the time of being born until [he] stopped working with it in 1992.' However*, we note that other excerpts of Mr. Riley's deposition that you provided indicate his childhood exposure to CCA was from playing in piles of sawdust, carving out 'wooden swords,' putting treated lumber in his slingshots and building 'clubhouses,' which are activities that cannot be performed by a 5 *day* old.") (first emphasis added). In sum, while Riley's testimony was contradictory as to when he was exposed to CCA, contradiction alone "do not negate the possibility" of coverage. *See State Farm Fire & Cas. Co. v. Lang*, No. CV 2:21-1063-RMG, 2021 WL 3856187, at *3 (D.S.C. Aug. 27, 2021); *see also Union Ins. Co. v. Soleil Grp., Inc.*, 465 F. Supp. 2d 567, 573 (D.S.C. 2006) (noting that "the complaint is construed liberally, with all doubts resolved in favor of the insured. 'If the underlying complaint creates a possibility of coverage under an insurance policy, the insurer

is obligated to defend'") (citing *Isle of Palms Pest Control Co. v. Monticello Ins. Co.*, 319 S.C. 12, 15 (Ct. App. 1994)).

Accordingly, the Court grants Koppers' partial motion for summary judgment as to the duty to defend. Travelers' motion for summary judgment on this point is therefore denied.

Next, the Court considers whether Koppers' "late notice" to Travelers of the Underlying Action precludes indemnification. Specifically, Travelers notes that while the Underlying Action was initiated in 2014, Koppers did not seek a defense and indemnity until September 1, 2016. (Dkt. No. 100-1 at 18); (Dkt. No. 99 ¶ 5). Koppers argues that this late notice precludes Koppers from seeking indemnification for the Underlying Action. (Dkt. No. 100-1 at 18) ("Koppers did not comply with the condition of coverage that if 'suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative.' [Dkt. No. 100-2 ¶ 4(b)]. 'No action shall lie against the company unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy[.]' [*Id.* ¶ 5]. Although Koppers seeks defense costs beginning on December 2, 2014, Koppers did not notify Travelers of Riley's lawsuit until 21 months later, on September 1, 2016. Even measuring from the date of Riley's deposition testimony as to childhood exposure, Koppers still delayed five months, from March 16 to September 1, 2016. Koppers' delay breached its duty to give Travelers immediate notice, and, because that delay does not affect an innocent third party, Travelers is entitled to judgment without having to show prejudice.").

The Policy states that if a "claim is made or suit is brought against the *insured*, the *insured* shall immediately forward to the company every demand, notice, summons or other process received by him or his representative." (Dkt. No. 100-2 at 5). The Policy further states that "No

7

action shall lie against the company unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy[.]" (*Id.*).

The Supreme Court of South Carolina has stated the following about the word "immediately" in insurance contracts such as the above:

> Despite their apparent straightforward purpose, litigation involving notice and cooperation clauses has ensued for over a century. As early as 1907, this Court discussed a notice clause, holding that the insured's duty to "send the summons immediately to the insur[ance] company, means that these things should be done with reasonable promptness under the circumstances ...." *Edgefield Mfg. Co. v. Maryland Cas. Co.*, 78 S.C. 73, 81, 58 S.E. 969, 971 (1907). Subsequent cases considered the effect of these clauses. *See, e.g.*, *Walker v. New Amsterdam Cas. Co.*, 157 S.C. 381, 154 S.E. 221, 222 (1930) (discussing a policy that required the insured "give immediate written notice of any accident, and like notice of any claim or suit resulting therefrom, together with every summons or other process" to the insurer); *Brown v. State Farm Mut. Auto. Liab. Ins. Co.*, 233 S.C. 376, 380, 104 S.E.2d 673, 674 (1958) (assuming, without deciding, that the insurance policy's notice clause was a condition precedent to coverage but finding the issue of whether the insurer waived that provision is a jury question).

*Neumayer v. Philadelphia Indem. Ins. Co.*, 427 S.C. 261, 266, 831 S.E.2d 406, 408 (2019). In sum, "[t]he requirement in a policy that the insured shall 'immediately' turn over to his insurance company any summons or complaint served on him . . . mean[s] not instantaneously, but within a reasonable time. What is reasonable is, of course, a fact question, to be determined in each case according to the surrounding circumstances." *Bruce v. U.S. Fidelity & Guaranty Co.*, 227 F. Supp. 339, 444 (D.S.C. 1967) (internal quotation marks omitted); *see also Prior v. S.C. Med. Malpractice Liab. Ins. Joint Underwriting Ass'n*, 305 S.C. 247, 249, 407 S.E.2d 655, 657 (Ct. App. 1991) ("No rule of law is more firmly established in this jurisdiction than that one suing on a policy of insurance, where the notice required by the policy is not timely given, cannot recover....")

The Court finds that questions of material fact exist as to whether Koppers' notice of the Underlying Action was "reasonable" under the circumstances and therefore denies Travelers' motion on this point.  As noted *supra*, the original complaint in the Underlying Action was filed

in November 2014 and Koppers did not seek a defense or indemnification from Travelers until September 1, 2016, nearly two years later. (Dkt. No. 99 ¶ 5). However, as also noted *supra*, the original complaint in the Underlying Action did not raise the possibility of coverage given it alleged Riley was exposed to CCA as an adult. Thus, under the circumstances, and reading all facts in a light most favorable to Koppers, the non-moving party, the Court finds that Koppers failure to notify Travelers of the Underlying Action in 2014 was reasonable. *See* (Dkt. No. 115 at 7-8) ("In this case, the timing of Koppers' notice of the Underlying Action to its insurers was reasonable under the circumstances. Mr. Riley's initial complaint filed in 2014 did not appear to allege exposure from birth, so Koppers notified its insurers providing coverage in the 1990s and 2000s."). Further, while Koppers did wait almost six months after deposing Riley in March 2016 to notify Travelers of the Underlying Action and Riley's potential exposure to CCA as a newborn, Koppers has put forth evidence which, if credited by a jury, might justify such a delay. *See* (Dkt. No. 115 at 8) (arguing that after Riley's deposition, Koppers "acted diligently in attempting to find legacy insurance policies going back to the 1970s and 1980s" and that Koppers did not locate the Policy until late August 2016). In sum, a determination as to the reasonableness of Koppers actions is simply a jury question and cannot be decided at this juncture. *See Brown v. State Farm Mut. Auto. Liab. Ins. Co.*, 233 S.C. 376, 394, 104 S.E.2d 673, 682 (1958) ("We agree with the lower Court that the question of whether the insured gave written notice of the accident with reasonable promptness under the circumstances [namely, a four-month delay] was a question for determination by the jury.").[3]

---

[3] Because Koppers settled the Underlying Action, at trial Travelers need not establish "prejudice" to show that Koppers unreasonably delayed in notifying it of the Underlying Action. *See Founders Ins. Co. v. Richard Ruth's Bar & Grill LLC*, 761 Fed. Appx. 178, 182 (4th Cir. 2019) (noting under South Carolina law that it is well settled that "the failure of the insured to comply with the notice requirement may bar recovery by the insured," but that, "where the rights of *innocent parties* are

Accordingly, Travelers' motion is denied on this point.

Next, Travelers argues that it is not required to reimburse Koppers for fees and costs incurred prior to March 16, 2016.

The Court grants Travelers' motion on this point and finds that Koppers is entitled—if at all—to reimbursement only for fees and costs incurred after March 16, 2016. As Koppers itself admits, the allegations in the original complaint of the Underlying Action did not raise the possibility of coverage, (Dkt. No. 115 at 8); (Dkt. No. 115-1 ¶ 3), and it was only after Riley's deposition in March 2016 that a possibility of coverage—and thus a possibility of breach of contract on Travelers' part—arose, (Dkt. No. 115-1 ¶ 3). Thus, because the duty to defend was not triggered until at the earliest March 16, 2016, it is from this moment on only that Koppers may seek reimbursement. *See Crossmann Communities of N. Carolina, Inc. v. Harleysville Mut. Ins. Co.*, No. 4:09-CV-1379-RBH, 2013 WL 5437712, at *21 (D.S.C. Sept. 27, 2013) ("The remedy to an insured for an insurer's *breach of its duty* to defend is payment of the expenses incurred by the insured in providing for its own defense.") (emphasis added) (citing *Unisun Ins. Co. v. Hertz Rental Corp.,* 312 S.C. 549, 554, 436 S.E.2d 182, 186 (S.C.App.1993)); *see also Hegler v. Gulf Ins. Co.,* 270 S.C. 548, 243 S.E.2d 443, 444 (1987) ("If (insurer) had refused initially to defend, it

---

threated by a failure of the insured to comply with the notice requirements of the policy, the insurer must show that its rights have been substantially prejudiced by the insured's failure to provide notice") (emphasis added); *Vermont Mut. Ins. Co. v. Singleton*, 316 S.C. 5, 11 (1994); *Hatchett v. Nationwide Mut. Ins. Co.*, 244 S.C. 425, 435 (1964) ("It is well settled that, unless waived by the insurer, the failure of an insured to comply with the policy provisions as to notice or forwarding suit papers, which by the terms of the contract made conditions precedent to liability, will bar recovery."); *see also MAG Mut. Ins. Co. v. Brown*, No. 6:14-CV-353, 2015 WL 13648556, at *1 (D.S.C. July 24, 2015) ("'[i]nnocent parties' is the term of art used by South Carolina courts when discussing whether an insurer can disclaim coverage based on actions taken by the insured.... In such cases, the third parties are 'innocent' in that they did nothing to jeopardize coverage").

10

would undoubtedly have been liable for the payment of counsel fees incurred by (insured) in the defense of the damage action.").

In sum, the Court grants Travelers' motion for summary judgment on this point and finds that Koppers may not recover fees and costs incurred before March 16, 2016.

Travelers next argues that to the extent Koppers is entitled to recover fees from March 16, 2016 onward, only those fees incurred after September 1, 2016 are recoverable because it was only at this moment that Travelers received notice of the Underlying Action. Plaintiff, for its part, argues that all fees incurred after March 1, 2016 are recoverable.

In South Carolina, an insurer's duty to defend arises "when an underlying suit is brought against the insured with allegations that are arguably within the scope of the insurance policy's coverage," not when the insured tenders proper notice of the underlying suit or explicitly demands a defense thereto. *Episcopal Church in S.C. v. Church Ins. Co. of Vermont*, 53 F. Supp. 3d 816, 828 (D.S.C. 2014) (citing *Allstate Ins. Co. v. Wilson*, 259 S.C. 586, 193 S.E.2d 527, 530 (1972)); *Dudek v. Commonwealth Land Title Ins. Co.*, 466 F. Supp. 3d 610, 617 (D.S.C. 2020), *reconsideration denied,* No. 2:19-CV-3237-DCN, 2021 WL 795580 (D.S.C. Mar. 2, 2021). Because an insured's duty to provide notice of a lawsuit is not a condition precedent to an insurer's duty to defend, "the insurer must show substantial prejudice to the insurer's rights before recovery is barred." *Id.* (citing *Vermont Mut. Ins. Co. v. Singleton By & Through Singleton*, 316 S.C. 5, 446 S.E.2d 417, 421 (1994) (internal quotation marks omitted)).

The Court denies Travelers' motion on this point. Per the reasoning articulated in *Episcopal Church In South Carolina,* to deny Koppers recovery for fees and costs incurred before September 1, 2016, Travelers must demonstrate substantial prejudice—something which it has not done at this time. *Episcopal Church in S.C.*, 53 F. Supp. 3d at 829-30 (predicting that South

Carolina law would hold that "absent a showing by the insurer of substantial prejudice caused by the insured's late notice, an insurer who breached its duty to defend will be liable for reasonable costs of defense incurred both before and after notice") (citing *Sherwood Brands, Inc. & Hartford Acc. & Indem. Co.*, 347 Md. 32, 50 (1997) ("If the delay in giving notice is not a factor in the insurer's decision not to defend—if it would have declined the defense in any event based on its mistaken conclusion that there was no potential coverage—the insurer should not later be allowed to use the delay as a bar to reimbursing the insured for the reasonable expenses incurred in defending the covered claim.")).

For the above reasons, Travelers' motion is denied on this point.

Next, Travelers argues that Koppers has not established that the costs and fees it seeks reimbursement for are "reasonable" because Koppers has not put forth evidence "from which a jury could assess whether its fees were proportionate to the settlement value of Riley's case." (Dkt. No. 100-1 at 25); (Dkt. No. 99 ¶¶ 48-50) (noting that Travelers does not contest the line-item charges or the rates of defense counsel paid by Koppers in the Underlying Action and that, "[a]part from Travelers' contention that the defense fees and costs incurred by Koppers in the Underlying Action were disproportionate to the settlement value of Riley's claim, Travelers does not otherwise contest that those defense fees and costs were reasonable").

"As part of its proof on the damages for breach of contract for refusing to provide a complete defense in the underlying action, the insured must show that the requested fees and costs were reasonable, necessary and incurred in the defense of the underlying lawsuit." *Crossmann Communities of N. Carolina, Inc. v. Harleysville Mut. Ins. Co.*, No. 4:09-CV-1379-RBH, 2013 WL 5437712, at *21 (D.S.C. Sept. 27, 2013).

The Court denies Travelers' motion on the above point. In its briefing, Travelers cites *Hardaway Concrete Co. v. Hall Contracting Corp.,* 374 S.C. 216, 647 S.E.2d 488 (S.C. App. 2007) for the proposition that Koppers must justify the "beneficial results obtained" in the Underlying Action to recover its attorneys' fees and costs. As the *Crossman* court noted while discussing *Hardaway*, however, the factors articulated in *Hardaway* are not relevant in an action for breach of contract in the insurance context. *Crossman*, 2013 WL 5437712, at *21 ("The Court notes that this case presents a different issue for the Court than the issue in *Hardaway.* In that case, the Court addressed the issue of the appropriate attorneys' fees award for a plaintiff that prevailed in litigation where one of the statutory remedies available to a successful litigant is an award of attorneys' fees. *Hardaway, supra,* 647 S.E.2d at 494–5. In this case, the attorneys' fees and costs sought by Beazer to enforce Harleysville's duty to defend are breach of contract damages, and the basic premise for breach of contract damages is to place the non-breaching party in the same position as if there had been no breach. *See, e.g., King v. Oxford,* 282 S.C. 307, 315–316, 318 S.E.2d 125, 130 (S.C.App.1984); 1 Insurance Claims and Disputes Section 4:35 (6th ed.) ('The best rule, however, is simply to apply the standard ordinarily used for proving contractual damages. An award of attorneys' fees resulting from a breach of a duty to defend represents the insured's damages resulting from the carrier's breach of contract. It should not be confused with those cases in which a trial court is authorized to award the prevailing party in litigation before the court reasonable attorneys' fees.')."). For the reasons articulated in *Hardaway*, the Court declines to apply *Crossman* and denies Travelers' motion on this point.

Last, Travelers argues that Koppers is not entitled to prejudgment interest.

"The law allows prejudgment interest on obligations to pay money from the time when, either by agreement of the parties or operation of law, the payment is demandable, if the sum is

certain or capable of being reduced to certainty." *Babb v. Rothrock*, 310 S.C. 350, 353, 426 S.E.2d 789, 791 (1993) (citing *Southern Welding Works, Inc. v. K & S Construction Co.,* 286 S.C. 158, 332 S.E.2d 102 (Ct.App.1985)). The fact that the sum due is disputed does not render the claim unliquidated for the purposes of an award of prejudgment interest. *Wayne Smith Construction Co., Inc. v. Wolman, Duberstein and Thompson,* 294 S.C. 140, 363 S.E.2d 115 (Ct.App.1987). The proper test for determining whether prejudgment interest may be awarded is whether or not the measure of recovery, not necessarily the amount of damages, is fixed by conditions existing at the time the claim arose. 47 C.J.S. *Interest & Usury* § 49 at 124–25 (1982).

The Court denies Travelers' motion on the above point. Here, the sum allegedly due under the policy is "capable of being reduced to certainty" and prejudgment interest may therefore be awarded. *Brooklyn Bridge, Inc. v. South Carolina Ins. Co.*, 309 S.C. 141, 145 (Ct. App. 1992) (awarding prejudgment interest in coverage dispute); *Agape Senior Primary Care, Inc. v. Evanston Ins. Co.*, 304 F. Supp. 3d 492, 503 (D.S.C. 2018) (awarding prejudgment interest on defense fees and costs against carrier breaching its duty to defend).

## IV.    Conclusion

For the reasons stated above, and as detailed herein, the Court grants Plaintiff's partial motion for summary judgment, (Dkt. No. 101), grants in part and denies in part Travelers' motion for summary judgement, (Dkt. No. 100), and denies Travelers' motion to strike, (Dkt. No. 125).

**AND IT IS SO ORDERED**.

s/ Richard M. Gergel
Richard M. Gergel
United States District Judge

February 22, 2022
Charleston, South Carolina