# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| Koppers Performance Chemicals, Inc., f/k/a Osmose Wood Preserving Co. of America, Inc. f/k/a Osmose Wood Preserving, Inc. f/k/a Osmose, Inc., | Civil Action No. 2:20-cv-2017-RMG |
| Plaintiff, | |
| v. | **ORDER AND OPINION** |
| The Travelers Indemnity Company; Argonaut-Midwest Insurance Company d/b/a Argo Group; Insurance Company of North America d/b/a Chubb; Indemnity Insurance Company of North America d/b/a Chubb; Pacific Employers Insurance Company d/b/a Chubb; and Ace American Insurance Company d/b/a Chubb, | |
| Defendants. | |

Before the Court is Plaintiff Koppers Performance Chemicals, Inc. f/k/a Osmose Wood Preserving Co. of America, Inc. f/k/a Osmose Wood Preserving, Inc. f/k/a Osmose, Inc. ("Plaintiff" or "Koppers")'s motion for partial summary judgment (Dkt. No. 103). Also before the Court is Defendant Argonaut-Midwest Insurance Company ("Argo")'s motion for summary judgment (Dkt. No. 104) and Argo's motion to strike (Dkt. No. 124). For the reasons stated below, the Court grants Argo's motion for summary judgment, denies as moot Argo's motion to strike, and denies Plaintiff's motion for partial summary judgment.

## **Background**

This is a declaratory judgment action and breach of contract action filed by Plaintiff against various insurance companies including Argo. (Dkt. No. 1).

1

From June 1, 1979 through December 1, 1982, Argo issued insurance policies (the "Argo Policies") to "Osmose Wood Preserving Co. of America, Inc., and Griffin Forest Industries, Inc., DBA Hawaii Wood Preserving Co., and DBA Osmose Pacific, Inc., a Subsidiary." (Dkt. No. 104-6); (Dkt. No. 104-7); (Dkt. No. 104-8); (Dkt. No. 104-9); (Dkt. No. 103-1 at 3-4). The 1979 Argo Policy was issued pursuant to an application submitted by Triad Insurance Agency in Honolulu, Hawaii. (Dkt. No. 104-6 at 1) ("Producer: Triad Insurance Agency, Inc., 345 Queen St., Suite 900, Honolulu, Hawaii"); *see also* (Dkt. No. 104-10); (Dkt. No. 123-2 ¶ 8).

On November 24, 2014, Philip Riley sued Plaintiff and others through a verified complaint (the "Original Complaint") in the Charleston County Court of Common Pleas, No. 2014CP107249 (the "Underlying Action"). (Dkt. 104-13 ¶ 10) (suing "Koppers Performance Chemicals, Inc. f/k/a/ Osmose Wood Preserving Co. of America"). "Osmose Wood Preserving Co. of America, Inc." is Kopper's former name. (Dkt. No. 103-2 at 187:20-188:23). Therein, Riley alleged that, at all relevant times, he was a citizen of and resided in South Carolina, (Dkt. No. 104-13 ¶ 1), and that Plaintiff manufactured "the wood treatment chemicals" at issue in the Underlying Action—namely chromated copper arsenate ("CCA"), (*Id.* ¶ 24). The Original Complaint alleged that Riley, while working "in the fence-making industry," used lumber treated with CCA, (*Id.* ¶¶ 23-26), and, developed cancer because of that exposure.

Roughly two years later, around December 23, 2016, Plaintiff tendered the Original Complaint to Argo. (Dkt. No. 104-15); (Dkt. No. 104-16) (acknowledging receipt of the tender by email dated December 29, 2016); (Dkt. No. 103-1 at 8) ("Koppers sought a defense and indemnity from Argonaut under the Policy on December 23, 2016."). Around this time, Plaintiff provided Argo one page from Riley's deposition, (Dkt. No. 1-2), wherein Riley testified that the "timeframe

that I'm talking about" was "from '78 to '92, you know, when I was—from the time of being born until we stopped working with" CCA in 1992, (Dkt. No. 116 at 8).

By letter dated June 22, 2017, Argo denied coverage of the Underlying Action. (Dkt. No. 104-18). Argo denied coverage because it determined that Plaintiff was not a named insured under the Argo Policies. (*Id.* at 1-3). On June 23, 2017, Argo provided further documentation to Plaintiff supporting its coverage position. (Dkt. No. 104-19).

On August 31, 2017, Riley filed an amended complaint in the Underlying Action. (Dkt. No. 109-14). It is undisputed that prior to initiating this lawsuit, Plaintiff did not tender the amended complaint to Argo. (Dkt. No. 117 at 8).

On January 31, 2018, Plaintiff's counsel responded for the first to Argo's coverage determination. (Dkt. No. 104-20). The letter did not mention the amended complaint.

In March of 2018, Plaintiff settled the claims against Riley for $150,000.00. (Dkt. No. 99 ¶ 51).

On May 27, 2020, Plaintiff initiated this action to recover costs associated with defending and settling the Underlying Action. (Dkt. No. 1).

On August 31, 2020, Argo filed an amended answer and counterclaims. (Dkt. No. 29).

On January 3, 2022, Plaintiff moved for partial summary judgment as to Argo. (Dkt. No. 103). Argo opposes. (Dkt. No. 116). Plaintiff filed a reply. (Dkt. No. 122).

On January 3, 2022, Argo moved for summary judgment. (Dkt. No. 104). Plaintiff opposes. (Dkt. No. 117). Argo filed a reply. (Dkt. No. 123).

On February 7, 2022, Argo moved to strike Plaintiff's reply to its motion for partial summary judgment. (Dkt. No. 124). Plaintiff opposes. (Dkt. No. 127). Argo filed a reply. (Dkt. No. 132).

The parties' respective motions are fully briefed and ripe for disposition.

## Legal Standard

To prevail on a motion for summary judgment, the movant must demonstrate that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The party seeking summary judgment has the burden of identifying the portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [which] show that there is no genuine issue as to any material fact and that the moving part is entitled to a judgement as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 & n.4 (1986) (citing Rule 56(c)). The Court will interpret all inferences and ambiguities against the movant and in favor of the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Where the moving party has met its burden to put forth sufficient evidence to demonstrate there is no genuine dispute of material fact, the non-moving party must come forth with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing Rule 56(e)). An issue of material fact is genuine if the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

## Discussion

### I.  Hawaii Law Governs the Argo Policies

In a diversity case, a district court applies the substantive law of the forum state to resolve a plaintiff's state law claims. *Erie Railroad v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Brown v. American Broadcasting Co.,* 704 F.2d 1296, 1299 (4th Cir.1983). Federal courts sitting in diversity apply the forum state's choice of law rules. *Francis v. Allstate Inc. Co.*, 709 F.3d 362, 369 (4th Cir. 2013).

4

South Carolina choice of law principals encompass both the traditional *lex loci contractus* doctrine and S.C. Code Ann. § 38–61–10. Historically, South Carolina courts followed the rule of *lex loci contractus* and applied the law of the state where the application for insurance was made, the policy delivered, and the contract formed. *Unisun Ins. Co. v. Hertz Rental Corp.,* 312 S.C. 549, 436 S.E.2d 182 (S.C. App. 1993).

The legislature modified this general rule by statute in 1947—now codified as S.C. Code Ann. § 38–61–10. The statute provides that:

> All contracts of insurance on property, lives, or interests in this State are considered to be made in the State and all contracts of insurance the applications for which are taken within the State are considered to have been made within this State and are subject to the laws of this State.

S.C. Code Ann. § 38-61-10. "Where this statute applies it governs as South Carolina's rule of conflicts." *Sangamo Weston, Inc. v. Nat'l Surety Corp.*, 307 S.C. 143, 414 S.E.2d 127, 130 (1992).

In *Sangamo,* the South Carolina Supreme Court considered the applicability of S.C. Code Ann. § 38–61–10 to an insurance contract. *Id.* At issue were insurance policies covering a South Carolina manufacturing facility that were executed outside of South Carolina by non-citizens of South Carolina. *Id.* The insured sought declaratory judgment to determine the scope of insurance coverage. *Id.* The *Sangamo* court first had to resolve "which state's law should be applied in interpreting these insurance contracts." *Id.* at 129. Critical to this determination was the fact that the insured "property" at issue—Sangamo's manufacturing facility—was permanently located in South Carolina. *Id.* at 130. The court held that insuring property, lives and interests in South Carolina constitutes a significant contact with this state. *Id.* at 131. Thus, the court applied § 38–61–10. *Id.*

By contrast, in *Yeager v. Allstate Ins. Co.,* the court held that § 38–61–10 was not applicable because of an insufficient connection to South Carolina. No. 9:09–860–MBS, 2010 WL

680429 at *5 (D.S.C. Feb. 23, 2010). There, a South Carolina accident triggered a Georgia automobile insurance policy. *Id.* The insured was a Georgia resident with a Georgia driver's license driving a vehicle registered in Georgia. *Id.* at *1. However, she was living part-time with her boyfriend across the border in Beaufort County, South Carolina. *Id.* Further, she worked for clients in South Carolina as a bookkeeper and filed tax returns in both Georgia and South Carolina. *Id.* Indeed, at the time of the accident, she was traveling from a South Carolina client's place of business to her part-time South Carolina residence. *Id.*

The *Yeager* court held that, despite the insured's ties to South Carolina, her connections lacked "the degree of permanency" sufficient to trigger the application of § 38–61–10. *Id.* at *5. While the connection was more than the mere situs of the accident, the court nevertheless distinguished the situation with cases where § 38–61–10 applied. *Id.*

Specifically, the court contrasted, *inter alia*, *Sangamo* where the property insured—a manufacturing facility—was permanently located in South Carolina. *Id.* The court noted that while the insured was a part-time resident of South Carolina and paid income taxes there, she was a permanent resident of Georgia, and licensed and registered there. Thus, her "connection to South Carolina [was] not significant enough to trigger application of § 38–61-10." *Id.* Accordingly, *Yeager* held § 38–61–10 was not applicable and instead applied the rule of *lex loci contractus,* which dictated the use of Georgia law. *Id.* at *6.

Similarly, in *Russell v. McGrath*, 135 F. Supp. 3d 427, 432 (D.S.C. 2015), the court found the insurance contract at issue was not governed by South Carolina law. In *Russell*, the driver was a citizen of the state of Connecticut studying at college in South Carolina. While driving an automobile purchased, registered, and insured outside of South Carolina, the driver lost control of his vehicle and crashed, killing himself and his passengers. The court held the case was "directly

6

analogous" to *Yeager* and that the insured and driver's connections to South Carolina were even weaker than those there. Neither the student nor his mother—who owned the vehicle—were ever employed in or permanent residents of South Carolina. Nor did either individual ever file taxes in South Carolina. Given the above, the court concluded the contract was governed by Florida law. *Id*.

The Court finds that the Argo Polices are governed by Hawaii law. The polices were obtained through a Hawaii broker, *see, e.g.*, (Dkt. No. 104-6 at 1) ("Producer: Triad Insurance Agency, Inc., 345 Queen St., Suite 900, Honolulu, Hawaii 968813), and insured property located exclusively within Hawaii, (*Id.* at 2) ("Lot 19, Pukoloa St., Hon., Hi. & Hanakai St., Kahului, Maui); (Dkt. No. 104-6 at 1-2) (same); (Dkt. No. 104-8) (certificate of insurance describing "operations/locations/vehicles" as "Waiau Garden Villa, Phase VI, Pearly City, Oahu, Hawaii"); (Dkt. No. 104-9 at 1-2). Beyond the fact that Riley was a citizen of and allegedly injured by Plaintiff's product in South Carolina, no facts here evidence a "connection" or "nexus" between the Argo Policies and South Carolina. This renders the instant matter less compelling than even *Yeager* or *Russell*. Thus, because they have no connection to the State of South Carolina, the Argo Policies do not come within § 38-61-10. Accordingly, the Court finds that the Argo policies are governed under traditional *lex locus contractus* doctrine and, by extension, Hawaii law.

## II. Argo Does Not Have a Duty to Defend

### a. The Argo Policies Do Not Insure Operations Outside of Hawaii

Under Hawaii law, courts look to the plain language of the insurance policy to determine the scope of the insurer's duties. *Burlington Ins. Co. v. Oceanic Design & Const. Inc.*, 383 F.3d 940, 945 (9th Cir. 2004) ("In Hawaii, the terms of an insurance policy are to be interpreted according to their plain, ordinary, and accepted sense in common speech."); *see also* Haw. Rev. Stat. § 431:10-237 ("Every insurance contract shall be construed according to the entirety of its

terms and conditions as set forth in the policy, and as amplified, extended, restricted, or modified by any rider, endorsement or application attached to and made a part of the policy.").

> Nevertheless, adherence to the plain language and literal meaning of insurance contract provisions is not without limitation. We have acknowledged that because insurance policies are contracts of adhesion and are premised on standard forms prepared by the insurer's attorneys, we have long subscribed to the principle that they must be construed liberally in favor of the insured and any ambiguities must be resolved against the insurer. Put another way, the rule is that policies are to be construed in accord with the reasonable expectations of a layperson.

*Tri–S Corp. v. W. World Ins. Co.*, 110 Hawai'i 473, 489, 135 P.3d 82, 98 (2006) (quoting *Dairy Rd. Partners v. Island Ins. Co., Ltd.*, 92 Hawai'i 398, 411–12, 992 P.2d 93, 106–07 (2000) (internal citations, quotation marks, brackets, and ellipses omitted)).

A contract term is considered ambiguous only if it is "capable of being reasonably understood in more ways than one." *Cho Mark Oriental Food, Ltd. v. K & K Int'l*, 73 Haw. 509, 520, 836 P.2d 1057 (1992). "[T]he parties' disagreement as to the meaning of a contract or its terms does not render clear language ambiguous." *State Farm Fire & Cas. Co. v. Pac. Rent-All, Inc.*, 90 Hawai'i 315, 324, 978 P.2d 753 (1999).

Here, Argo argues that Plaintiff is not a named insured under its Policies because the DBA language therein is a limiting term restricting coverage to Hawaii Wood Preserving Co. and Osmose Pacific, Inc. (Dkt. No. 104 at 15-21). For its part, Plaintiff argues that the DBA entities listed in the Argo Policies refer only to Griffin Forest Industries, Inc. and that, by contrast, Plaintiff's entire company is ensured thereunder without any geographic limitation.

The Court finds that Argo Policies are limited to ensuring entities and operations located in Hawaii. The Argo Policies indicate that "Osmose Wood Preserving Co. of America, Inc., and Griffin Forest Industries, Inc., DBA Hawaii Wood Preserving Co., and DBA Osmose Pacific, Inc., a Subsidiary" are named insureds. (Dkt. No. 104-6); (Dkt. No. 104-7); (Dkt. No. 104-8); (Dkt. No.

8

104-9). Even assuming the DBA entities refer to only Griffin Forest Industries, Inc., reasonably read as a whole, the Argo Policies ensure only property and interests of Plaintiff located within Hawaii. *See* (Dkt. No. 104-6 at 2) (noting "Hazards" include "Lot 19, Pukoloa St., Hon., Hi. & Hanakai St., Kahului, Maui); (Dkt. No. 104-7 at 1-2) (same); (Dkt. No. 104-8) (certificate of insurance describing "operations/locations/vehicles" as "Waiau Garden Villa, Phase VI, Pearly City, Oahu, Hawaii"); (Dkt. No. 104-9 at 1-2) (1981-1982 policy); (Dkt. No. 104-22 at 39:22-40; 65:4-8) (testifying that Osmose Wood was headquartered in Buffalo, New York); (Dkt. No. 104-23 at 34:20-23) (same); *see also Hawaiian Isle Adventures, Inc. v. N. Am. Capacity Ins. Co.*, 623 F. Supp. 2d 1189, 1194 (D. Haw. 2009) ("Under Hawaii law, general rules of contract construction apply to the interpretation of insurance contracts. Insurance policies must be read as a whole and construed in accordance with the plain meaning of its terms, unless it appears that a different meaning is intended.") (internal citations omitted); *Santiago*, 137 Haw. at 155 ("Since an agreement is interpreted as a whole, it is assumed in the first instance that no part of it is superfluous."); (Dkt. No. 103-3 at 180:18-180:1) (testifying the Argo Policies provide *products* coverage outside of Hawaii because "typically, you are relinquishing control of your product"). The presence of Hawaii-based DBA entities sitting alongside Plaintiff in the "Named Insured" section reinforces this conclusion. *See Central Mutual Insurance Company v. Mary Ann Davis dba Past Times*, No. 6:19-CV-00065, 2021 WL 5987040, at *14 (S.D. Tex. Dec. 17, 2021) (finding where named insured included the phrase "DBA" and where the policy and application were consistent with limiting coverage to the DBA entity, insured was not entitled to coverage for operations other than the DBA's operations); *Consol. Am. Ins. Co. v. Landry*, 525 So. 2d 567, 568 (La. Ct. App. 1988) (finding, in context of general liability policy issued to "Lersey Landry d/b/a Landry's Apartments," that the policy unambiguously provided coverage only with respect to the

"d/b/a" entity Landry Apartments); *Miller v. Hehlen*, 209 Ariz. 462, 468, 104 P.3d 193, 199 (Ct. App. 2005) (citing *Landry* and finding, in context of an employment agreement, that the term "doing business as H & R Block" should be interpreted as a limiting phrase and that to do otherwise would be to render the phrase superfluous).

### b. The Original Complaint Did Not Trigger Coverage

Argo argues that the Policies do not provide coverage for the Underlying Action. First, Argo argues that neither complaint in the Underlying Action alleges bodily injury arising in relation to the operations of the DBA entities in the Argo Policies. Second, Argo notes that even if Plaintiff were an insured under the Policies, the Original Complaint—the only complaint tendered to Argo—lacks allegations of bodily injury during the Argo Policy periods. For its part, Plaintiff argues that even if it is not a named insured under the Argo Policies, because the Original Complaint is "silent as to where the" CCA that contributed to Riley's cancer was manufactured, the "underlying pleadings do not rule out the possibility that treated wood Mr. Riley was exposed to has a connection with Koppers' Hawaii operations." (Dkt. No. 117 at 6).

The duty to defend under Hawaii insurance law is broad and "arises wherever there is the mere potential for coverage." *Commerce & Indus. Ins. Co. v. Bank of Haw.*, 73 Haw. 322, 326, 832 P.2d 733 (1992). Hawaii abides by the "complaint allegation rule," whereby the determination of whether an insurer has a duty to defend focuses on the claims and facts that are alleged.[1] *Burlington*, 383 F.3d at 944. Thus, "[t]he duty to defend 'is limited to situations where

---

[1] "The focus is on the alleged claims and facts. The duty to defend is limited to situations where the pleadings have alleged claims for relief which fall within the terms for coverage of the insurance contract. Where pleadings fail to allege any basis for recovery within the coverage clause, the insurer has no obligation to defend." *Burlington Ins. Co. v. Oceanic Design & Const. Inc.*, 383 F.3d 940, 944–45 (9th Cir. 2004). "In determining whether coverage exists under a liability policy, Hawaii courts do not look at the way a litigant states a claim, but rather at the underlying facts alleged in the pleadings." *Allstate Ins. Co. v. Miller*, 732 F.Supp.2d 1128, 1134

the pleadings have alleged claims for relief which fall within the terms for coverage of the insurance contract.'" *Id.* (quoting *Hawaiian Holiday Macadamia Nut Co. v. Indus. Indem. Co.*, 76 Hawai'i 166, 169, 872 P.2d 230 (1994)). "Where pleadings fail to allege any basis for recovery within the coverage clause, the insurer has no obligation to defend." *Hawaiian Holiday*, 76 Hawai'i at 169, 872 P.2d (quotation marks and citation omitted). The duty to defend is determined at the time of tender. *Burlington Ins. Co. v. United Coatings Mfg. Co.*, 518 F.Supp.2d 1241, 1248 n.2 (D. Haw. 2007) (citing *Dairy Rd. Partners*, 92 Hawai'i at 422 n.14, 992 P.2d at 117 n. 14); *see also Hart v. Ticor Title Ins. Co.*, 126 Hawai'i 448, 458, 272 P.3d 1215, 1225 (2012) ("The duty to defend is not outcome-determined but merely depends on a potential for coverage and is determined at the time suit is brought and not at the conclusion of litigation. Stated differently, to have any effect at all, the duty to defend must be determined when the claim is initially asserted.") (citations and quotation marks omitted).

> The Hawaii Supreme Court explains the scope of the duty to defend as follows—
>
> The obligation to defend is broader than the duty to pay claims and arises wherever there is the mere *potential* for coverage. In other words, the duty to defend rests primarily on the possibility that coverage exists. This possibility may be remote but if it exists, the insurer owes the insured a defense. All doubts as to whether a duty to defend exists are resolved against the insurer and in favor of the insured.

*Tri–S Corp.*, 110 Hawai'i at 488, 135 P.3d at 97; *see also Burlington*, 383 F.3d at 944 ("The duty to defend exists irrespective of whether the insurer is ultimately found not liable to the insured and is based on the possibility for coverage, even if remote, determined at the time suit is filed."). An insurer's duty to defend thus extends beyond claims where liability within the scope of the policy is ultimately found. *See Finley v. Homes Ins. Co.*, 975 P.2d 1145, 1149–50 (Haw. 1998) ("Where

---

(D. Haw. 2010) (citing *Bayudan v. Tradewind Ins. Co.*, 87 Hawai'i 379, 957 P.2d 1061, 1069 (App. 1998)).

a complaint alleges grounds that are both within and without the scope of insurance coverage, the insurer is required to defend the entire action.") (citing *First Ins. Co. of Haw., Inc. v. State of Haw.*, 66 Haw. 413, 665 P.2d 648, 652 (1983)).

To prevail on a motion for summary judgment with respect to the duty to defend, it is the insurer's burden to prove "that there is no genuine issue of material fact with respect to whether a *possibility* exists that the insured would incur liability for a claim covered by the policy." *Tri-S Corp.*, 110 Hawai'i at 488 (brackets and citation omitted).

An "insurer owes a duty to indemnify the insured 'for any loss or injury which comes within the coverage provisions of the policy, provided it is not removed from coverage by a policy exclusion.'" *State Farm Fire & Cas. Co. v. GP W., Inc.*, 190 F. Supp. 3d 1003, 1014 (D. Haw. 2016) (citation omitted). On a motion for summary judgment regarding an insurer's duty to indemnify the insured, the insurer need not "disprove any *possibility* that its insured might be liable for a claim asserted in the underlying lawsuits." *Id.* at 1014–15 (quoting *Dairy Rd. Partners v. Island Ins. Co.*, 92 Hawai'i 398, 413, 992 P.2d 93, 108 (2000)). Instead, "the insurer must only 'establish the absence of a genuine issue of material fact regarding the question of coverage pursuant to the plain language of the insurance policies and the consequent entitlement to the entry of judgment as a matter of law.'" *Id.* at 1015 (quoting *Dairy Rd.*, 92 Hawai'i at 413, 992 P.2d at 108).

Under the Argo Policies, the "company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of . . . bodily injury . . . to which this insurance applies, caused by an occurrence." (Dkt. No. 104-6 at 3) (emphasis removed). The "company shall have the right to and duty to defend any suit against the insured seeking damages on account of such bodily injury . . . ." (*Id.*) (emphasis removed). "[B]odily injury means

12

bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom." (Dkt. No. 104-11 at 1) (emphasis removed).

The Court finds that the Original Complaint did not trigger coverage under the Argo Policies. The Original Complaint did not name any of the DBA entities or describe Plaintiff's Hawaii operations. Further, and crucially, even if the Argo Policies covered Plaintiff's operations outside of Hawaii, the Original Complaint does not allege bodily injury during the applicable policy periods (from around 1979 to around 1982—Riley's infancy), a fact even Plaintiff admits. *See* Declaration of Stephen C. Kiefer, (Dkt. No. 115-1 ¶¶ 1, 3) (former in-house counsel for Plaintiff stating that "[w]hen the Riley lawsuit was first filed in late 2014, it did not appear to me that Mr. Riley was alleging exposure to CCA" in the "1970s and 1980s"); (Dkt. No. 104-13 ¶ 23) (alleging occupational exposure to CCA). Accordingly, under Hawaii's "complaint allegation rule," *Burlington Ins. Co.*, 383 F.3d at 994, the duty to defend was not triggered by the Original Complaint because "the duty to defend is limited to situations where the underlying *pleadings* have *alleged* a claim for relief which falls within the terms for coverage of the insurance contract," *Weight v. USAA Cas. Ins. Co.*, 782 F. Supp. 2d 1114, 1122 (D. Haw. 2011) (citing *Burlington Ins. Co.*, 383 F.3d at 994), and the Original Complaint contains no such allegations. The fact that Plaintiff submitted to Argo an excerpt from Riley's deposition along with the Original Complaint does not change the above conclusion.

In *Allstate Ins. Co. v. Riihimaki*, No. 11-00529 ACK-BMK, 2012 WL 1983321 (D. Haw. May 30, 2012), the insured argued a duty to defend existed because, although the allegations in the underlying complaint did not provide coverage, certain "interrogatory responses" raised the "possibility" the underlying plaintiff could later bring a covered claim. *See id.* at *9 ("Riihimaki asserts that Allstate's broad duty to defense arises because Allstate has been placed 'on notice'

13

that there is a *potential* for coverage based upon . . . Kim's interrogatory responses in connection with the Underlying Complaint which referenced Riihimaki's alleged defamatory statements."). The *Riihimaki* court acknowledged that certain cases applying Hawaii law had, in dicta, countenanced insurers looking to facts outside the pleadings to determine coverage. *Id.* *10-11. After noting, however, that neither *Standard Oil Co of Cal. v. Hawaiian Ins. & Guar. Co. Ltd.*, 65 Haw. 521 (1982) nor *Bayudan v. Tradewind Ins. Co.*, 87 Hawai'i 379, 957 P.2d 1061, 1069 (App. 1998) had actually considered such outside information, *see id* at *11 ("[I]n both *Standard Oil* and *Tradewind*[] the court considered the scope of the insurer's duty to investigate based on the pleadings."), and observing that "in the wake of *Standard Oil*[] recent opinions involving determinations of Hawaii insurance coverage have continuously and consistently applied the 'complaint allegation' rule, limiting an insurer's duty to defend situations where the *pleadings* have alleged claims for relief that fall within the terms of coverage," the court declined to consider the interrogatory responses in determining coverage. *Id.* ("Under the 'complaint allegation rule,' Kim's interrogatory response clearly would not provide a valid support for a conclusion that Allstate had a duty to defend . . . ."). The reasoning of *Riihimaki* applies equally here given Plaintiff "has not advanced any case law support . . . wherein [deposition excerpts] have been held to put an insurer 'on notice' of a duty to defend" under Hawaii law. *Id.* at *12. *Cf. Weight*, 782 F. Supp. 2d at 1126 ("Preventing insured parties from having to take 'conflicting position[s]' in their efforts to both obtain insurance coverage and avoid liability for an underlying claim is one of the reasons that the Hawai'i Supreme Court has given for evaluating an insurer's duty to defend based on the *allegations in the underlying complaint rather than on extrinsic evidence*.") (emphasis added). Accordingly, the Court rejects Plaintiff's argument that Argo wrongfully denied coverage upon submission of the Original Complaint and the Riley deposition excerpt. And, as Plaintiff

undisputedly never tendered the amended complaint to Argo, the Court need not consider whether coverage is triggered thereunder. *See Gemini Ins. Co. v. ConstRX Ltd.*, 360 F. Supp. 3d 1055, 1065 (D. Haw. 2018) ("The duty to defend is determined at the time of tender."); *Commerce & Indus. In. Co. v. Bank of Haw.*, 73 Haw. 322, 327 (1992) (stating that the duty to defend is "determined at the time suit is brought and not at the conclusion of the litigation"); (Dkt. No. 117 at 8) (arguing Plaintiff had "no obligation to 'tender' a copy of the amended complaint to Argonaut . . . after Argonaut [wrongfully] disclaimed all coverage obligations").

To summarize, the Court finds that Argo had no duty to defend or indemnify Plaintiff regarding the Underlying Action and, accordingly, grants Argo summary judgment on these points. By contrast, Plaintiff's motion for partial summary judgment is denied on this point.

### III.   Argo's Counterclaims

Plaintiff moves for summary judgment on Argo's counterclaims. These counterclaims include: (1) a declaration that Plaintiff is not an insured; (2) Misrepresentation; (3) Mutual Mistake-Reformation; (4) and Unilateral Mistake. (Dkt. No. 103-1 at 21).

Given the Court's holding regarding the duty to defend, Plaintiff's motion for partial summary judgment is denied as to Argo's first counterclaim. As to Plaintiff's motion regarding Argo's other counterclaims—claims which seek to reform or rescind the Argo Policies—the Court declines to rule on said claims. Given the Court's finding *supra* that the Argo Policies do not provide coverage for the Underlying Action, said counterclaims are, practically speaking, moot. *See, e.g.*, (Dkt. No. 116 at 16) (arguing that Argo's misrepresentation claim survives Plaintiff's motion for summary judgment "*[i]f* . . . the named insureds purchased the [Argo Policies] with the intent of obtaining coverage . . . without any limitations to the operations of the DBA entities"—

an issue which cannot now be adjudicated given the Court's holding above and the relief—recission—sought by Argo) (emphasis added).[2]

## IV. Conclusion

For the reasons stated above, the Court grants Argo's motion for summary judgment, (Dkt. No. 104), denies as moot Argo's motion to strike, (Dkt. No. 124), and denies Plaintiff's motion for partial summary judgment, (Dkt. No. 103). The Clerk is directed to enter judgment for Argo as against Plaintiff.

**AND IT IS SO ORDERED**.

s/ Richard M. Gergel
Richard M. Gergel
United States District Judge

April 18, 2022
Charleston, South Carolina

[2] Given the court does not reach the issue of whether Argo's counterclaims are time barred, the Court denies Argo's motion to strike, (Dkt. No. 124), as moot. Regardless, the Court would have declined to consider Plaintiff's argument that Argo's counterclaims were time barred because Plaintiff improperly raised the argument for the first time in its reply brief. *Clawson v. FedEx Ground Package Sys., Inc.*, 451 F. Supp. 2d 731, 734 (D. Md. 2006) ("The ordinary rule in federal courts is that an argument raised for the first time in a reply brief or memorandum will not be considered.").

