# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| Koppers Performance Chemicals, Inc., f/k/a Osmose Wood Preserving Co. of America, Inc. f/k/a Osmose Wood Preserving, Inc. f/k/a Osmose, Inc., <br><br>          Plaintiff, <br><br>     v. <br><br> The Travelers Indemnity Company; Argonaut-Midwest Insurance Company d/b/a Argo Group; Insurance Company of North America d/b/a Chubb; Indemnity Insurance Company of North America d/b/a Chubb; Pacific Employers Insurance Company d/b/a Chubb; and Ace American Insurance Company d/b/a Chubb, <br><br>          Defendants. | Civil Action No. 2:20-cv-2017-RMG <br><br><br> **ORDER AND OPINION** |

Before the Court is Plaintiff Koppers Performance Chemicals, Inc. f/k/a Osmose Wood Preserving Co. of America, Inc. f/k/a Osmose Wood Preserving, Inc. f/k/a Osmose, Inc.'s ("Plaintiff" or "Koppers") amended motion for partial summary judgment against Defendant The Travelers Indemnity Company ("Travelers") (Dkt. No. 157). Also before the Court is Travelers' renewed motion for summary judgment (Dkt. No. 155) and Travelers' renewed motion to strike (Dkt. No. 154). For the reasons stated below, and as detailed herein, the Court grants Koppers' amended motion for partial summary judgment, grants in part and denies in part Travelers' renewed motion for summary judgment, and denies Travelers' renewed motion to strike.

1

I. **Background**[1]

This is a declaratory judgment action and breach of contract action filed by Plaintiff against various insurance companies including Travelers. (Dkt. No. 1).

Travelers issued policy number TR-NSL-107T689-078 in effect from January 1, 1978 to January 1, 1979 (the "Policy") to Osmose Wood Preserving of America, Inc., an entity to which Koppers is the successor in interest. (Dkt. No. 99 ¶¶ 1-2). The Policy is governed by South Carolina law. (*Id.* ¶ 4).

On November 24, 2014, Philip H. Riley initiated a lawsuit in South Carolina state court (the "Underlying Action") against, inter alia, Koppers. (*Id.* ¶ 5); (Dkt. No. 155-4 at 2-17). The complaint in the Underlying Action alleged that Riley was then 35-years old, that Riley had handled wood treated with chromated copper arsenate ("CCA"), and that his exposure to CCA had caused Riley to develop cancer. (Dkt. No. 155-4 at 2-17).

On March 16, 2016, Riley was deposed in the Underlying Action. (Dkt. No. 99 ¶ 38).

On September 1, 2016, Koppers sought a defense and indemnity from Travelers regarding the Underlying Action. (Dkt. No. 99 ¶ 5).

On May 18, 2017, Travelers first requested and learned that Riley's date of birth was December 27, 1978. (*Id.* ¶¶ 33-34).

On July 18, 2017, Travelers denied Koppers coverage with respect to the Underlying Action (the "Denial Letter"). (*Id.* ¶ 35); (Dkt. No. 155-3 at 27-30) (copy of Denial Letter). "At the time that it issued the Denial, Travelers was aware of and was in possession of pages 1, 2, 3, 4, 27, 28, 34, 52, 80, 107, 118, 119 of the deposition transcript of Mr. Riley in the Underlying Action,

---

[1] The facts herein are drawn in large part from the parties' joint stipulation. (Dkt. No. 99 at 1) ("The Stipulations were prepared in an effort to avoid the time, expense, and other impacts of discovery and for use by the Court in evaluating the dispositive motions of Koppers and/or Travelers.").

2

taken March 16, 2016, including Mr. Riley's statement at page 107 that his 'level of exposure to CCA would have been the same as [his] father's ...from '78 to '92, you know when I was – from the time of being born until we stopped working with it in 1992 – that's the timeframe that I'm talking about.'" (Dkt. No. 99 ¶ 38); (*Id.* ¶ 42) ("The documents in Travelers' possession relating to the Underlying Action at the time it issued the Denial Letter were the Complaint in the Underlying Action, the aforementioned pages of deposition of Mr. Riley, and the other documents produced as part of its document production (TRAV0001-0312 and TRAV0331-0768).").

On March 23, 2018, Koppers settled the claims against it in the Underlying Action for $150,000.00. (*Id.* ¶ 51).

On May 27, 2020, Koppers filed a declaratory judgment action, seeking a declaration the Policy applies to the Underlying Action. (Dkt. No. 1 at ¶ 19 *et seq.*). Koppers brings a breach of contract action alleging Travelers breached the duty to defend and indemnify Koppers in the Underlying Action.

On May 3, 2022, Travelers filed a renewed motion to strike. (Dkt. Nos. 154, 165). Koppers opposes. (Dkt. No. 162).

That same day, Travelers also filed a renewed motion for summary judgment. (Dkt. Nos. 155, 164). Koppers opposes. (Dkt. No. 161).

Simultaneously, Koppers filed its amended partial motion for summary judgment. (Dkt Nos. 157, 166). Travelers opposes. (Dkt. No. 160).

The parties' respective motions are fully briefed and ripe for disposition.

**II.     Pertinent Procedural History**

On February 23, 2022, the Court granted Plaintiff's partial motion for summary judgment, granted in part and denied in part Travelers' motion for summary judgement, and denied Travelers'

3

motion to strike. (Dkt No. 133) (the "Prior Order"). In pertinent part, the Court found a question of material fact existed as to whether Koppers' notice of the Underlying Action was reasonable under the circumstances and relied on the declaration of Koppers' former in-house counsel Stephen Kifer in reaching this conclusion. (*Id.* at 8-9)

On March 24, 2022, the Court granted reconsideration of the Prior Order. (Dkt. No. 138) (the "Reconsideration Order"). The Court reopened discovery to permit Travelers to obtain discovery "on the issues raised in Kifer's declaration." (Dkt. No. 138 at 8). As explained in the Reconsideration Order, Kifer's declaration—alongside a declaration by Robert Friedman—were used by Koppers to oppose Travelers' motion for summary judgment but "consisted exclusively of evidence Koppers refused to disclose in discovery." (*Id.* at 3). While the Court found most of Fed. R. Civ. P. 37's factors leaned toward excluding Kifer's declaration, the Court found Koppers' nondisclosures harmless as they were possible to cure by reopening discovery "to allow Travelers to obtain discovery on the issued raised in Kifer's declaration—including deposing Kifer and/or Friedman on the issues raised in Kifer's declaration." (*Id.* at 6-7).

The parties' completed said discovery. *See* Order and Opinion, (Dkt. No. 171) (granting Plaintiff's motion for protective order and denying Travelers' motion to compel and finding discovery completed per the Reconsideration Order).

### III. Legal Standard

To prevail on a motion for summary judgment, the movant must demonstrate that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The party seeking summary judgment has the burden of identifying the portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [which] show that there is no genuine issue as to any material fact and that the

moving part is entitled to a judgement as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 & n.4 (1986) (citing Rule 56(c)). The Court will interpret all inferences and ambiguities against the movant and in favor of the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Where the moving party has met its burden to put forth sufficient evidence to demonstrate there is no genuine dispute of material fact, the non-moving party must come forth with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing Rule 56(e)). An issue of material fact is genuine if the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

## IV.    Discussion

To begin, the Court considers Travelers' renewed motion to strike Kifer's declaration. (Dkt. No. 154). Travelers' principal argument for striking Kifer's declaration is that his deposition testimony revealed it was not based on personal knowledge. *See* (Dkt. No. 154 at 6-8). Specifically, Travelers notes that when asked if he had personal knowledge regarding his entire declaration, Kifer testified that he had personal knowledge once Friedman "refreshed my recollection." (Dkt. No. 157-4 at 17:14-24) (testifying "It's mostly date issues. I don't recall dates. So I don't know if that's personal knowledge or not. But I — I relied on Rob [Friedman] to provide me with dates of when the lawsuit was filed and that sort of thing."). Travelers also asserts that certain record evidence produced in supplemental discovery contradicts statements Kifer made in his declaration. (Dkt. No. 154 at 14) (arguing Kifer stated that after Riley was deposed in March 2016, Kifer was informed by Koppers' counsel that Riley's alleged period of exposure went back "potentially . . . to the day Mr. Riley was born" but that emails Koppers' counsel sent Kifer did not mention exposure going back to the "day Mr. Riley was born"); *see also* (Dkt. No. 154 at 8-

13) (arguing Freidman admitted that he did nothing to prepare for his deposition and "claimed no personal knowledge as to dates or anything else").

The Court denies Travelers' renewed motion to strike Kifer's declaration. Travelers identifies no case law justifying striking Kifer's declaration. *See* (Dkt. No. 154). Put simply, while Travelers' most cogent argument is that Kifer's declaration is not based on personal knowledge, *see* Fed. R. Evid. 602, that assertion is not accurate as Kifer testified only that he had he "d[idn't] recall dates." *See also* (Dkt. No. 154 at 14) (arguing Kifer's statement in paragraph 4 of his declaration wherein he states that he was informed by Koppers' defense counsel that Riley's alleged exposure went back "potentially . . . to the day Mr. Riley was born" was false because emails from March 2016 to Kifer from defense counsel do not contain discussion of Riley as a newborn); Kifer Deposition, (Dkt. No. 154-7 at 63, 68-69) (testifying Koppers' defense counsel likely told Kifer about Riley's alleged exposure from birth and that while Kifer was not "focused" on finding policies from 1978, he did "want[] every single insurance policy that [he] could get that could conceivably relate to this lawsuit").

Accordingly, the Court proceeds to review the parties' respective motions for summary judgment.

Under South Carolina law, "[q]uestions of coverage and the duty of a liability insurance company to defend a claim brought against its insured are determined by the allegations of the complaint." *City of Hartsville v. South Carolina Mun. Ins. & Risk Fin. Fund*, 382 S.C. 535, 543 (2009) (citing *C.D. Walters Const. Co. v. Fireman's Ins. Co. of Newark, N.J.*, 281 S.C. 593, 594 (Ct. App. 1984)). If the "underlying complaint creates a possibility of coverage under an insurance policy, the insurer is obligated to defend" its insured. *Id.* at 544 (citing *Gordon-Gallup Realtors, Inc. v. Cincinnati Ins. Co.*, 274 S.C. 468 (1980)). Moreover, "[a]lthough a determination of an

insurer's duty to defend is dependent upon the complaint, an analysis of this duty involves the allegations of the complaint and not the specifically identified causes of action." *Id.* at 544–45. "An insurer's duty to defend may arise from facts outside of the complaint that are known to the insurer." *Id.* at 545.

It is the insured's burden to establish that a claim falls within the coverage of an insurance contract. *Jensen v. Selective Ins. Co. of Se.*, No. 4:12–cv–02133–RBH, 2013 WL 3148341, at *2 (D.S.C. June 19, 2013) (citing *Gamble v. Travelers Ins. Co.*, 251 S.C. 98, 102 (1968)). Alternatively, the insurer shoulders the burden of establishing the exclusions to coverage and the exclusion is construed "most strongly" against the insurer. *Id.* (citing *Boggs v. Aetna Cas. & Sur. Co.*, 272 S.C. 460, 252 S.E.2d 565, 568 (1979)). However, an insured party bears the burden of proving an exception to an exclusion. *Ross Dev. Corp. v. PCS Nitrogen Inc.*, Nos. 12–2059, 12–2454, 2013 WL 2440844, at *3 (4th Cir. June 6, 2013) (citing *Helena Chem. Co. v. Allianz Underwriters Ins. Co.*, 357 S.C. 631, 636, 594 S.E.2d 455, 460 n.5 (2004)).

As noted above, the original complaint in the Underlying Action indicated that Riley was 35 years old as of November 24, 2014, and thus born in either 1978 or 1979.  The original complaint alleged that Riley was exposed to CCA in an occupational context, however, which would have put his exposure to CCA outside of the years during which the Policy was in effect. *See* (Dkt. No. 155-4 ¶ 23) (alleging that "[f]or years, Mr. Riley worked in the fence-making industry using treated lumber").  Kifer admitted as much in his declaration. (Dkt. No. 115 at 7-8) (stating that "Mr. Riley's initial complaint filed in 2014 did not appear to allege exposure from birth, so Koppers notified its insurers providing coverage in the 1990s and 2000s.").  Therefore, the pertinent question before the Court is whether the deposition excerpts provided to Travelers supported the possibility of coverage.

The Court finds that the deposition testimony available to Travelers as of July 18, 2017 indicated a possibility that Riley could have been exposed to CCA between his birth on December 27, 1978 and January 1, 1979. (Dkt. No. 155-4 at 107:10-13) ("But from '78 to '92, you know, when I was—from the time being born until we stopped working with it in 1992, that's the timeframe that I'm talking about."). In fact, though Travelers rejected the possibility Riley was exposed to CCA as a newborn, the denial letter it issued to Koppers impliedly acknowledged such a conclusion was possible. (Dkt. No. 100-3 at 29) (acknowledging the conflicting nature of Riley's deposition testimony and noting that "[a]lthough the allegations of the complaint suggest that Mr. Riley did not suffer injuries 'during the policy period' as required by the Policy, you provided excerpts from Mr. Riley's deposition during which he alleges *he was exposed to CCA 'from the time of being born until [he] stopped working with it in 1992.' However*, we note that other excerpts of Mr. Riley's deposition that you provided indicate his childhood exposure to CCA was from playing in piles of sawdust, carving out 'wooden swords,' putting treated lumber in his slingshots and building 'clubhouses,' which are activities that cannot be performed by a 5 *day* old.") (first emphasis added). In sum, while Riley's testimony was contradictory as to when he was exposed to CCA, contradiction alone "do not negate the possibility" of coverage. *See State Farm Fire & Cas. Co. v. Lang*, No. CV 2:21-1063-RMG, 2021 WL 3856187, at *3 (D.S.C. Aug. 27, 2021); *see also Union Ins. Co. v. Soleil Grp., Inc.*, 465 F. Supp. 2d 567, 573 (D.S.C. 2006) (noting that "the complaint is construed liberally, with all doubts resolved in favor of the insured. 'If the underlying complaint creates a possibility of coverage under an insurance policy, the insurer is obligated to defend'") (citing *Isle of Palms Pest Control Co. v. Monticello Ins. Co.*, 319 S.C. 12, 15 (Ct. App. 1994)).

To rebut this conclusion, Travelers cites to the November 22, 2021 declaration of Chere Jo Ward, Riley's mother, in which she states she is "not aware of any way in which Phillip would have been exposed to [CCA] from Wednesday December 27, 1978 through Monday, January 1, 1979. On those days, we did not bring our newborn baby to the family business, and he did not play in any sawdust." (Dkt. No. 155-6). Travelers argues that *USAA Prop. & Cas. Ins. Co. v. Clegg*, 377 S.C. 643 (2008) permits the Court to consider Ward's declaration in determining the duty to defend.

The Court declines to consider Ward's declaration. Nothing in *Clegg* suggests that an insurer can develop extrinsic evidence after the underlying case is over and use it to retroactively override its duty to defend owed at the time the underlying action was tendered. If permitted to do this, an insurer could effectively eliminate the "litigation insurance" purchased by a policyholder in a general liability policy that protects against groundless, false, or fraudulent lawsuits. *See Sloan Constr. Co., Inc. v. Central Nat. Ins. Co. of Omaha*, 269 S.C. 183, 186 (1977) (holding that the duty to defendant require "a defense will be furnished even if any of the allegation of the suit are groundless, false or fraudulent"); *Perdue Farms, Inc. v. Travelers Ca.*, 448 F.3d 252, 258 (4th Cir. 2006) (describing the importance of such "litigation insurance").

Thus, the Court grants Koppers' motion for partial summary judgment and finds Travelers owed it a defense of the Underlying Action as detailed above.

Next, the Court considers whether Koppers' "late notice" to Travelers of the Underlying Action precludes indemnification. Specifically, Travelers notes that while the Underlying Action was initiated in 2014, Koppers did not seek a defense and indemnity until September 1, 2016. (Dkt. No. 155-3 at 2); (Dkt. No. 99 ¶ 5). Koppers argues that this late notice precludes Koppers from seeking indemnification for the Underlying Action. (Dkt. No. 155-1 at 19) ("Koppers did not

comply with the condition of coverage that if 'suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative.' [Dkt. No. 155-2 ¶ 4(b)]. 'No action shall lie against the company unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy[.]' [*Id.* ¶ 5]. Although Koppers seeks defense costs beginning on December 2, 2014, Koppers did not notify Travelers of Riley's lawsuit until 21 months later, on September 1, 2016. Even measuring from the date of Riley's deposition testimony as to childhood exposure, Koppers still delayed five months, from March 16 to September 1, 2016. Koppers' delay breached its duty to give Travelers immediate notice, and, because that delay does not affect an innocent third party, Travelers is entitled to judgment without having to show prejudice.").

The Policy states that if a "claim is made or suit is brought against the *insured*, the *insured* shall immediately forward to the company every demand, notice, summons or other process received by him or his representative." (Dkt. No. 155-2 at 5). The Policy further states that "No action shall lie against the company unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy[.]" (*Id.*).

The Supreme Court of South Carolina has stated the following about the word "immediately" in insurance contracts such as the above:

> Despite their apparent straightforward purpose, litigation involving notice and cooperation clauses has ensued for over a century. As early as 1907, this Court discussed a notice clause, holding that the insured's duty to "send the summons immediately to the insur[ance] company, means that these things should be done with reasonable promptness under the circumstances ...." *Edgefield Mfg. Co. v. Maryland Cas. Co.*, 78 S.C. 73, 81, 58 S.E. 969, 971 (1907). Subsequent cases considered the effect of these clauses. *See, e.g.*, *Walker v. New Amsterdam Cas. Co.*, 157 S.C. 381, 154 S.E. 221, 222 (1930) (discussing a policy that required the insured "give immediate written notice of any accident, and like notice of any claim or suit resulting therefrom, together with every summons or other process" to the insurer); *Brown v. State Farm Mut. Auto. Liab. Ins. Co.*, 233 S.C. 376, 380, 104 S.E.2d 673, 674 (1958) (assuming, without deciding, that the insurance policy's

> notice clause was a condition precedent to coverage but finding the issue of whether the insurer waived that provision is a jury question).

*Neumayer v. Philadelphia Indem. Ins. Co.*, 427 S.C. 261, 266, 831 S.E.2d 406, 408 (2019). In sum, "[t]he requirement in a policy that the insured shall 'immediately' turn over to his insurance company any summons or complaint served on him . . . mean[s] not instantaneously, but within a reasonable time. What is reasonable is, of course, a fact question, to be determined in each case according to the surrounding circumstances." *Bruce v. U.S. Fidelity & Guaranty Co.*, 227 F. Supp. 339, 444 (D.S.C. 1967) (internal quotation marks omitted); *see also Prior v. S.C. Med. Malpractice Liab. Ins. Joint Underwriting Ass'n*, 305 S.C. 247, 249, 407 S.E.2d 655, 657 (Ct. App. 1991) ("No rule of law is more firmly established in this jurisdiction than that one suing on a policy of insurance, where the notice required by the policy is not timely given, cannot recover....").

The Court finds that questions of material fact exist as to whether Koppers' notice of the Underlying Action was "reasonable" under the circumstances and therefore denies Travelers' motion on this point. As noted above, the original complaint in the Underlying Action was filed in November 2014 and Koppers did not seek a defense or indemnification from Travelers until September 1, 2016, nearly two years later. (Dkt. No. 99 ¶ 5). However, as also noted *supra*, the original complaint in the Underlying Action did not raise the possibility of coverage given it alleged Riley was exposed to CCA as an adult. Further, while Koppers did wait almost six months after deposing Riley in March 2016 to notify Travelers of the Underlying Action and Riley's potential exposure to CCA as a newborn, Koppers has put forth evidence which, if credited by a jury, might justify such a delay. *See* (Dkt. No. 115-1 at 2-3) (arguing that after Riley's March 2016 deposition, Koppers' defense counsel informed Kifer Riley's alleged exposure dated back to potentially the day he was born and that Kifer endeavored to locate legacy insurance policies); *see also* Kifer Deposition, (Dkt. No. 154-7 at 63, 68-69) (testifying Koppers' defense counsel likely

11

told Kifer by phone about Riley's alleged exposure from birth and that while Kifer was not "focused" on finding policies from 1978, he did "want[] every single insurance policy that [he] could get that could conceivably relate to this lawsuit"); (*Id.* at 71:19-24) ("I was trying to get every single policy that I could possibly get. So that could probably say 1940s or from the beginning of time through the present. 1970s, was I focused specifically on the 1970s, no. I was focused on getting every single policy I could get period."); (*Id.* at 63:10-13) ("Again, there was that random comment about from birth. But, you know, again, which seemed not credible, but nonetheless was there."). In sum, a determination as to the reasonableness of Koppers' actions is a question for the factfinder. *See Brown v. State Farm Mut. Auto. Liab. Ins. Co.*, 233 S.C. 376, 394, 104 S.E.2d 673, 682 (1958) ("We agree with the lower Court that the question of whether the insured gave written notice of the accident with reasonable promptness under the circumstances [namely, a four-month delay] was a question for determination by the jury.").[2]

Alternatively, Travelers argues that to the extent Koppers attempts to blame Osmose, its predecessor, for the delay in providing notice, said excuse is "unreasonable as a matter of law." *See* (Dkt. No. 115-1 ¶ 5) ("Koppers in its current form was created in 1988, so it did not have

---

[2] Because Koppers settled the Underlying Action, at trial Travelers need not establish "prejudice" to show that Koppers unreasonably delayed in notifying it of the Underlying Action. *See Founders Ins. Co. v. Richard Ruth's Bar & Grill LLC*, 761 Fed. Appx. 178, 182 (4th Cir. 2019) (noting under South Carolina law that it is well settled that "the failure of the insured to comply with the notice requirement may bar recovery by the insured," but that, "where the rights of *innocent parties* are threated by a failure of the insured to comply with the notice requirements of the policy, the insurer must show that its rights have been substantially prejudiced by the insured's failure to provide notice") (emphasis added); *Vermont Mut. Ins. Co. v. Singleton*, 316 S.C. 5, 11 (1994); *Hatchett v. Nationwide Mut. Ins. Co.*, 244 S.C. 425, 435 (1964) ("It is well settled that, unless waived by the insurer, the failure of an insured to comply with the policy provisions as to notice or forwarding suit papers, which by the terms of the contract made conditions precedent to liability, will bar recovery."); *see also MAG Mut. Ins. Co. v. Brown*, No. 6:14-CV-353, 2015 WL 13648556, at *1 (D.S.C. July 24, 2015) ("'[i]nnocent parties' is the term of art used by South Carolina courts when discussing whether an insurer can disclaim coverage based on actions taken by the insured.... In such cases, the third parties are 'innocent' in that they did nothing to jeopardize coverage").

insurance policies predating 1988. The historic policies I was searching for were actually purchased by Osmose. Osmose's wood preservation business was purchased by Koppers in 2014. Because the historic policies were so old and had not been purchased by Koppers, it was a time consuming process for Koppers to try to determine the identity of the insurers and locate copies of the policies."). Specifically, Travelers cites § 4.14 of Koppers' 2014 Stock Purchase Agreement whereby Osmose was supposed to provide Koppers a schedule of "each of the material insurance policies" Osmose held. *See* (Dkt. No. 155-1 at 24). Travelers argues that because Kifer was "responsible for tendering claims to insurers," he should have known of the Travelers' policy per § 4.14, and therefore Koppers has only itself to blame for its failure to promptly notify Travelers. (*Id.*). Alternatively, to the extent the Travelers' policy was omitted by Osmose while preparing its schedule under § 4.14, Travelers argues that because "Koppers is standing in the shoes of the very person [Osmose] obligated to give Travelers notice" of the existence of the policy, Koppers would—again—have no one but "itself" to blame. (*Id.* at 25).

The Court rejects the above arguments. Again, at heart, such arguments go to the reasonableness or credibility of Kifer's explanation for Koppers' delay in notifying Travelers of the Underlying Lawsuit. And as noted already, such arguments are properly for a factfinder to decide, and not this Court on summary judgment.

For the reasons stated above, Travelers' motion is denied on this point.

Next, Travelers argues that Koppers is not entitled to indemnification for the $150,000 settlement reached between Koppers and Riley. Travelers argues that the South Carolina Supreme Court has held that "'the scope of [the insurer's] liability is limited to damages accrued during its 'time on the risk.'" *Crossmann Communities of N.C., Inc. v. Harleysville Mut. Ins. Co.*, 395 S.C. 40, 45, 717 S.E.2d 589, 591 (2011)). The "initial burden to prove that a loss is covered under an

insurance policy is on the insured," and it is only "once the insured has done so" that "the burden shifts to the insurer to prove that an exclusion applies to defeat coverage." *Ex parte Builders Mut. Ins. Co.*, 431 S.C. 93, 102, 847 S.E.2d 87, 92 (2020). The policy period is a basic term of coverage, not an exclusion. *Gaskins v. Firemen's Ins. Co. of Newark, N.J.*, 206 S.C. 213, 217, 33 S.E.2d 498, 499 (1945).

The Court grants Travelers' motion for summary judgment on this point. Koppers presents no substantive argument in opposition per the above nor facts establishing actual injury during the policy period. *See generally* (Dkt. No. 161); *Gamble v. Travelers Co*, 251 S.C. 98, 103 (1968). Accordingly, the Court finds that Koppers is not entitled to indemnification for any portion of the Riley settlement.

Next, Travelers argues that it is not required to reimburse Koppers for fees and costs incurred prior to March 16, 2016.

The Court grants Travelers' motion on this point and finds that Koppers is entitled—if at all—to reimbursement only for fees and costs incurred after March 16, 2016. As Kifer himself admitted, the allegations in the original complaint of the Underlying Action did not raise the possibility of coverage, (Dkt. No. 115-1 ¶ 3), and it was only after Riley's deposition in March 2016 that a possibility of coverage—and thus a possibility of breach of contract on Travelers' part—arose. Thus, because the duty to defend was not triggered until at the earliest March 16, 2016, it is from this moment on only that Koppers may seek reimbursement. *See Crossmann Communities of N. Carolina, Inc. v. Harleysville Mut. Ins. Co.*, No. 4:09-CV-1379-RBH, 2013 WL 5437712, at *21 (D.S.C. Sept. 27, 2013) ("The remedy to an insured for an insurer's *breach of its duty* to defend is payment of the expenses incurred by the insured in providing for its own defense.") (emphasis added) (citing *Unisun Ins. Co. v. Hertz Rental Corp.,* 312 S.C. 549, 554, 436

14

S.E.2d 182, 186 (S.C.App.1993)); *see also Hegler v. Gulf Ins. Co.,* 270 S.C. 548, 243 S.E.2d 443, 444 (1987) ("If (insurer) had refused initially to defend, it would undoubtedly have been liable for the payment of counsel fees incurred by (insured) in the defense of the damage action.").

In sum, the Court grants Travelers' motion for summary judgment on this point and finds that Koppers may not recover fees and costs incurred before March 16, 2016.

Travelers next argues that to the extent Koppers is entitled to recover fees from March 16, 2016 onward, only those fees incurred after September 1, 2016 are recoverable because it was only at this moment that Travelers received notice of the Underlying Action. Plaintiff, for its part, argues that all fees incurred after March 1, 2016 are recoverable.

"In South Carolina, an insurer's duty to defend arises 'when an underlying suit is brought against the insured with allegations that are arguably within the scope of the insurance policy's coverage,' not when the insured tenders proper notice of the underlying suit or explicitly demands a defense thereto." *Harriman v. Associated Indus. Ins. Co., Inc.*, 544 F. Supp. 3d 605, 614 (D.S.C. 2021), *adhered to as amended*, No. 2:18-CV-2750-DCN, 2022 WL 816123 (D.S.C. Mar. 17, 2022); *Dudek v. Commonwealth Land Title Ins. Co.*, 466 F. Supp. 3d 610, 617 (D.S.C. 2020) (quoting *Episcopal Church in S.C. v. Church Ins. Co. of Vermont*, 53 F. Supp. 3d 816, 828 (D.S.C. 2014)).

The Court denies Travelers' motion on this point. As noted above, the Court has found questions of material fact exist as to whether Koppers' delay in notifying Travelers of the Underlying Action was reasonable. To the extent a factfinder concludes it was not reasonable, Koppers will not be entitled to reimbursement for its defense costs. To the extent a factfinder concludes such delay was reasonable, however, per the above case law Koppers would be entitled to costs beginning on March 1, 2016.

15

Thus, for the reasons states above, Travelers' motion is denied on this point.

Last, Travelers argues that Koppers is not entitled to prejudgment interest.

"The law allows prejudgment interest on obligations to pay money from the time when, either by agreement of the parties or operation of law, the payment is demandable, if the sum is certain or capable of being reduced to certainty." *Babb v. Rothrock*, 310 S.C. 350, 353, 426 S.E.2d 789, 791 (1993) (citing *Southern Welding Works, Inc. v. K & S Construction Co.,* 286 S.C. 158, 332 S.E.2d 102 (Ct.App.1985)). The fact that the sum due is disputed does not render the claim unliquidated for the purposes of an award of prejudgment interest. *Wayne Smith Construction Co., Inc. v. Wolman, Duberstein and Thompson,* 294 S.C. 140, 363 S.E.2d 115 (Ct.App.1987). The proper test for determining whether prejudgment interest may be awarded is whether or not the measure of recovery, not necessarily the amount of damages, is fixed by conditions existing at the time the claim arose. 47 C.J.S. *Interest & Usury* § 49 at 124–25 (1982).

The Court denies Travelers' motion on the above point. Here, the sum allegedly due under the policy is "capable of being reduced to certainty" and prejudgment interest may therefore be awarded. *Brooklyn Bridge, Inc. v. South Carolina Ins. Co.*, 309 S.C. 141, 145 (Ct. App. 1992) (awarding prejudgment interest in coverage dispute); *Agape Senior Primary Care, Inc. v. Evanston Ins. Co.*, 304 F. Supp. 3d 492, 503 (D.S.C. 2018) (awarding prejudgment interest on defense fees and costs against carrier breaching its duty to defend).

### V.     Conclusion

For the reasons stated above, and as detailed herein, the Court grants Plaintiff's amended motion for partial summary judgment, (Dkt. No. 157), grants in part and denies in part Travelers' renewed motion for summary judgement, (Dkt. No. 155), and denies Travelers' renewed motion to strike, (Dkt. No. 154).

**AND IT IS SO ORDERED**.

s/ Richard M. Gergel
Richard M. Gergel
United States District Judge

December 12, 2022
Charleston, South Carolina

17